16, 24, 7, and 73, Deidre Holland, Timothy J. Cavanagh & Associates And again, good morning, counsels. Would you identify yourselves for the record, please? Good morning, Your Honor. I'm Joseph O'Callaghan, for the defendant, Alice O'Callaghan. Thank you. Good morning. Brad Skabish, on behalf of the appellate. Thank you very much, gentlemen. And again, you get 20 minutes. Pardon me? I said appellate. Appellate. Thank you. You can be seated, gentlemen. You get 20 minutes for your argument. Do you want to divide yours up, counsel, or do you want to do all 20 at the beginning or save some time for rebuttal? Your Honor, I'd like to reserve a third of my time for rebuttal. So what's one-third of 20? You can do it. All right. Five. Six. Five. All right. Very good. Counsel, you ready to proceed then? I am. If you would. Thank you, Your Honor. May it please the Court, it's my privilege to address the Court on behalf of my clients in a case which we believe will have far-reaching implications. Counsel, lower this a little bit toward your mouth, if you would, please. Thank you. Good. Thank you, sir. Far-reaching implications beyond the effect simply on the litigants. It is a privilege because I am licensed to practice law and represent clients that are by the Illinois Supreme Court, and that happened many years ago. I suggest the case will be impactful beyond the parties because it will address, we believe, the duties and obligations that we as attorneys have who are privileged to represent our clients. The first issue in the case is the issue of sanctions, something which the trial courts seem to be quite reluctant to impose, even where the circumstances are egregious. We ask the Court to address most strongly the responsibility of the trial courts to impose sanctions where they are appropriate, as here. In 1988, our Supreme Court issued an opinion which hit the trial bar like a bombshell. The case was in Ray and James Himmel, 125-09-2nd-534. At that time, many of the trial bar were of the opinion that the Code of Professional Responsibility almost exclusively dealt with attorney-client relations, and that all was fair in litigation, so long as we did a good job and did not take from our clients anything that we were not permitted to take from them. James Himmel did an excellent job for his clients. He recovered more than his clients had lost in charge for a modest fee, but the Supreme Court suspended him from the practice of law for a year. Why did this happen? This happened because along with a lawyer's privilege to represent clients, there are also duties and obligations imposed upon a lawyer by virtue of membership in the bar of a court. Those duties and obligations run not only to our clients, but to the administration of justice and the duty to maintain the integrity of the legal profession. Back then we had what was called the Code of Professional Responsibility, which many lawyers thought was aspirational, but in Ray Himmel changed all that. The Supreme Court most forcefully held that we can do a good job of representing our clients and still learn to follow the code governing our duties and obligations. That code has been revised now and is known by a more proper title as the Rules of Professional Conduct. The first rule of professional conduct, Rule 1.1, is competency. A lawyer should provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation. Counsel, I'm going to apologize to you but interrupt you for a second. Can we get back to the sanctions issue? What's the standard of review on that sanction issue for us? I believe the standard of review on all of the issues in the case is de novo, Your Honor, because they are questions of law. Well, do you say the abuse of discretion in terms of sanction, counsel? Yeah, I'm sorry. You're correct, Your Honor. It is the abuse of discretion. Well, now we agree on that. So what was it about the trial court's opinion on the sanctions? It was the opinion in ruling that was an abuse of discretion as far as her determination that sanctions were not appropriate. Well, Your Honor, Rule 1.37 requires the lawyer to sign the court filing, to have read the filing, and to affirm the best of his knowledge, information, and belief formed after reasonable inquiry that the pleading is well-grounded in fact and warranted by existing law, a good-faith argument for the extension, modification, or reversal of existing law, and is not interposed for any improper purpose such as to harass. I understand your argument. There are two parts to it. One is that it's an improper purpose because he really just wanted your client's testimony, you say false testimony, and the other is that it wasn't warranted by existing law. Those are two possible bases that you're arguing that she should have imposed sanctions. Absolutely. Is that right? And they're really separate to some extent. Yes. That's correct. They're separate. And if I'm recalling correctly, she didn't really address the improper purpose one in her order. She addressed the part in which it was a great claim, but the appellate court went along with it, so I guess it's not sanctionable. What the trial court did was to look only at the issue of the contested facts on the paternity claim. The trial court did not look at all on the issue of whether there was a reasonable basis in law or fact, and there was no reasonable basis because the statute of limitations, both under the Paternity Act and the Public Act claim, had run. So that was a claim that could not be brought. And in addition, as the trial court had found several times during the course of this protracted litigation, the conversion claim was impossible to prove because the father defendants were in lawful possession of the funds having been granted possession by the order of Judge Egan. Okay, but let's talk about the improper purpose. Wasn't there testimony from other people that this gentleman looked upon him as his son and he thought it was his dad, and there was evidence to that effect, was there not? That all went to the issue of parentage, which was simply a predicate to the conversion claim. If there was no parentage, we never reached the conversion claim, which is what ultimately happened in the trial of cases to the other defendants. But here there was the trial court completely ignored not only the legal aspects of the statute of limitations and the impossibility of proof of the conversion. Well, there is no statute now, right? I mean, the second ruling was the prior statute didn't apply and the new one did? Your Honor, I believe that the current law with respect to a statute of limitations is unconstitutional, as we have argued in the brief. So I believe there is no statute of limitations at all whatsoever, not because the legislature abolished it, but because the legislature committed an unconstitutional act. But that's what brings us to what's at issue today. Why would we even deal with that issue? Because, again, that wasn't ruled on in the order of the final order that you're appealing, the August 26, 16 order. Your Honor, if I may first go back to the issue of sanctions. A very important point is that the trial court, in focusing solely on the quantum of proof of paternity, completely ignored this Court's prior opinion in which it said that the outcome of the issue of paternity has no bearing on the outcome of the conversion and malpractice claims. And that was totally ignored by the trial court. Is there precedent, and this is a real question I don't know the answer to, but is there precedent for imposing sanctions based on a claim that isn't well-founded when there's been no ruling by the trial court on any of these issues that you're saying makes the plaintiff's claim not well-founded? You haven't gotten a definitive ruling in your favor on any of these issues. I realize you saw one, but you haven't gotten one. Is there precedent for imposing sanctions in that kind of situation? Respectfully, Your Honor, there was a ruling on the limitations issue and on the conversion. But the last ruling on the limitations issue, as Justice Connors just pointed out, was against you. She said, no, the new statute applies. There is no statute of limitations. The paternity finding can still be made. And then he sought a voluntary dismissal. So the last ruling was not in your favor. There's been no definitive ruling in your favor on any of these issues that you say are a death knell, if you will, to plaintiff's claim. And you may be right, but I'm just asking, is there precedent for imposing sanctions where you don't have a ruling in your favor? I'm not certain of the answer to that, Your Honor. I don't know the answer either. But respectfully, with regard to the last order, this is where the case completely came off the rails. And I say this with great respect to Judge Brennan, but when she vacated the order of dismissal, she did so not based on any contention of the parties, because she said in her order, she was very detailed and said, I was correct in dismissing the case on paternity. I was the Paternity Act statute of limitations. I was correct in dismissing the case on the Probate Act statute of limitations. But because there has been a change in the law, even though plaintiff waived that issue by not raising it, she, sua sponte, resurrected this claim as a claim under Act of 2015. Counsel, I'm sorry. We've got to get to the argument of the involuntary dismissal and why that was inappropriate. I mean, we've got to get to that because your time is wasting here. Not wasting, but right now. Okay. The involuntary dismissal was inappropriate generally for two reasons. Number one, the statute permitting the involuntary dismissal provides that it cannot be ‑‑ I'm sorry. The statute and the case law interpreting the statute provide that the involuntary dismissal cannot be entered to avoid compliance with the rules. The rules that the voluntary dismissal contradicted were Rule 218 and 219, 219 setting the trial rate and 218 saying you can't voluntarily dismiss to avoid a ruling of the court. The case was going to trial on May 11th, I believe was the date. Plaintiff sought the voluntary dismissal to avoid going to trial. And that's very clear from the reported proceedings that that was the reason he was seeking the voluntary dismissal. So granting that voluntary dismissal was not an appropriate act. It was an abuse of discretion because the ‑‑ because granting it ran afoul of 218 and 219, in addition to which granting the voluntary dismissal was inappropriate and an abuse of discretion where there were pending dispositive motions which should have been ruled upon by a trial court. The trial court did not address ‑‑ If I'm reading this record correctly, on May 4th, 2016, which was the day before she granted, allowed the voluntary dismissal, she denied all the motions. Now, you may say she denied them improperly, but she denied all the motions, so they're not pending. I'm looking at the appendix of A33. Defendant's motion for judgment on the pleadings is denied. Defendant's motion for reconsideration of the February 11th, 2016 order is denied. She denied them all. Now, you may ‑‑ this is in your appendix of A33. That's right. You may disagree with that denial, and I understand why you disagree with that denial, but once they've been denied, they're not pending, and we can't look at them. I believe that's our understanding, or that seems to be what a voluntary dismissal is. Yeah, I believe that the order that you're referring to, I may be mistaken. It's in your opening brief, in the appendix to your opening brief. Right, and that was page A33. 33. That was the order entered on March 4th. Right. That may be true. I'm sorry. March 4th. Following the entry of that order, we filed two additional motions. Okay. So those are the ones that are still pending. Right. One was the amended motion for judgment on the pleadings. Okay. One was raising the constitutional issue that you had refused to hear the motion, and the other was the motion to dismiss the new claim on the basis that it was ‑‑ that the Parentage Act of 2015 was unconstitutional. Okay. And there had been no ruling on those? There had been no ruling on those. And I apologize. That's my misreading. You're right. It is March, not May. Okay. So these motions were pending at the time of the pretrial. Counsel, what's your ‑‑ I'm sorry? Just move on a little bit more, and we've got to get moving here. So sum up. We've got a couple more minutes to sum it up. Thank you, Your Honor. Those motions were pending. They were dispositive motions. They should have been heard. They should have been granted. That would have been the end of the case because the resuscitation of the cause of action which the court enacted sua sponte on February 11th was simply invalid. It was completely invalid. She relied upon the exception for the abolishment of the statute of limitations if there's no known acknowledged parent here. There was an acknowledged parent. It was the mother, Kimberly. This court has recognized that Kimberly was the mother of the advocate. We do ask the court to look at the constitutional issues which were raised and not properly disposed of as well as the issues that we have discussed this morning. Counsel, didn't the court deny some of the motions because they were filed after a mandatory filing date that was set up? That was the rationale of the court, Your Honor. That's correct. However, the mandatory filing date provided in the order entered in August of 2015 was February 9th, 2016. The court did not create this new cause of action until two days later, February 11th of 2016. It would have been absolutely impossible to address the merits of this resuscitated cause of action when it didn't exist. It did not exist? It did not exist because it came into existence only by Judge Brennan's interpretation of the Act of 2015. It was a cause of action under the Act of 2015, and Judge Brennan respectfully created this cause of action on February 11th. I'm not indicating that she was a partisan in doing that. She simply became an advocate.    It was a cause of action under the Act of 2015. That's as to the unconstitutionality of the parent act? Yes. All right. Counsel, sum up, please. I think we have covered the issues that we would like to bring to the Court's attention. Thank you, sir. We do hope that the Court will pay particular attention to the timeline in this case because it is the timeline that establishes when this new cause of action was created and Judge Brennan then entered into order saying essentially you cannot challenge this order. There will be no hearing on any motion which challenges the order. The only hearings will be on the pre-trial motions. Thank you, sir. Thank you, Your Honor. Can you get to that issue right away? I'm confused by that. As far as the unconstitutionality of the parentage act, was that a new issue that was brought up after that other order was entered? That issue came up in the briefing of the motion for reconsideration of the denial on the granting of the motion to dismiss that had happened in late 2015. I respectfully disagree with counsel's characterization that Judge Brennan somehow created this cause of action. The cause of action was one that existed from the beginning until the dismissal, which was then the subject of a motion for reconsideration, which was ultimately granted. Had counsel at that point felt that that somehow deprived him of his right to file later dispositive motions, perhaps he would have been within his right to then say, Your Honor, in light of your ruling, I would seek an extension of that February 9th deadline for all dispositive motions because you've only just ruled now on February 11th. But he didn't seek an extension. He didn't bring a motion. He never asked leave to bring these later motions. He just brought them without leave of court past a known dispositive motions deadline. But with leave of court or without leave of court, they were pending the time your voluntary dismissal was granted. Well, I would disagree with that. I think you were correct initially in that he brought the motions. They were summarily denied for having been brought after the date of the deadline the court brought. So whatever the reason for ruling was, which I think we all know, was that it was too late. I believe they had already been ruled on. I disagree with this contention. And, you know, as to our disagreement of the facts, I suppose the record will speak for itself. So in your view, they were sort of ruled on in advance. Anything after the state is denied. Correct. They had been ruled on. They were not pending. And I think I'm in a position to speak to some of the reasons things were done procedurally at that time. Of course, all in all, I go beyond what you think is a record. You'll disregard anything I say inappropriately. But I think I can help parse out some things for the court where the inferences are a little bit more clear, if you understand the timeline. Counsel suggests that the motion that bringing his clients into the case all along was some sort of a ruse to try and elicit what he characterizes as false testimony against the law firm. And nothing can be further from the truth. As we looked at this case in the beginning, the fowler defendants, his clients, were the primary wrongdoers. The law firm also was complicit in that, and that's why there were additional claims. But what we want to say is unfortunately the realities of practicing law sometimes. You don't do your client a great service if you get a piece of paper saying that somebody owes them for money when they don't have any money. So there were legitimate causes of action against both the law firm for having been privy to an affidavit saying that Renaud Fowler had a son, as well as the brothers themselves, who I believe then and believe to this day knew full well that they were bilking their nephew out of his rightful money. So it wasn't when requests were made that maybe we can leave you out of this case if you will simply provide the testimony we believe has been true all the time. It wasn't to elicit false testimony. It was to elicit truthful testimony against the action with deeper pocket that might be able to help our client out rather than against the brothers who ultimately may have gone nowhere even if we got the judgment. But putting that aside, as the case went forward closer and closer to trial without pending motions,  Why? Because again, tactically, the concern was we go to a jury trial. The jury looks at three brothers who actively stole the money from their nephew and a law firm who they might view as a passive victim in this action just as much as our client. They might not bother the law firm knew or should have known and between the two could have assessed all the liability against the three brothers giving us a judgment against the non-deep pocket and not against the one that might actually be able to pay a judgment. So our tactical decision was if we non-suit against the brothers, get our ruling on paternity, go to trial against the law firm, that gives us our best opportunity at recovery from them. It also gives us a year to refile against the three brothers. And that was the intention and remained the intention until a couple of things happened. We got a bad ruling on paternity from Judge Brennan. Once that happened... You're collaterally stopped, right? We're collaterally stopped. We brought a motion... You can't sue the brothers. The brothers are convicted. Now, we did bring a motion, a notice of appeal on that claim, but the claim with the law firm was ultimately settled, moving that that portion of the appeal so everything washes up against the brothers. So obviously, you know, the time has gone on and no effort to refile was ever made because there was no reason to do so once we were collaterally stopped. Again, I understand that I'm giving you some of the mental impressions of counsel that might not be off the ballboard record, but I think they're reasonable inferences once you understand the timeline that we're dealing with here. I am trying to understand the reality because if I'm understanding it correct, it really makes no difference whether it was a voluntary dismissal with right to refile because you're not going to refile as a matter of practicality, or a dismissal of merits, right? The brothers have done it. We're not now. I think you need to go to the middle of the... No, but now. Now that the case is before us, the only thing that really matters in what's before us is the sanctions. I agree. A lot of ink has been spilled in multiple briefs on a lot of issues that I don't know what can come of any of it other than the sanctions issue because there was no effort to resuscitate the case. So whether it had been on your... I agree. Okay. So let's get to the sanctions. As pointed out, the standard of review on the sanctions is abuse of discretion. And I think while it's obvious, it bears repeating, that the very judge who had dismissed the case and then allowed it to be resuscitated based on the motion for reconsideration and then accepted the non-suit and presided over the trial where she found that parentage wasn't proven by clear and convincing evidence is the same judge who said this still does not rise to this level of abuse where I need to enforce sanctions against the attorneys. And that's where I think you need to get back to what some of the underlying facts are. There was an affidavit. The counsel says in their brief that it's not mentioned in their reply brief. I believe it is if you go back to the record. Some of the earlier motions that this court has heard in the first appeal and the motions that are attached to the exhibits to some of the early motions in the record. It was an early on affidavit from one of the three brothers. It was Rensselaer and Fowler indicating that his brother, Renard, did have a son but they didn't know his whereabouts. That was later retracted. But that's a significant piece of evidence that was part of the mental equation when we go into this litigation from the beginning. There was also the testimony and affidavit of Crowley Fowler, the grandmother, that yes, in fact, Renard was the father of DeAndre. There was a testimony of Kimberly Hall, the mother. Yes, this is the man with whom I had my son, DeAndre. There was the testimony we sought to elicit from a Social Security administrator regarding records. Some of that was ultimately kept out of evidence by Judge Brennan. But nevertheless, it was evidence that was known to and part of the evidence intended to be put on. There was the evidence from an office manager at a car dealership where Renard formerly worked where he listed on some beneficiary statements DeAndre as his son. These are all pieces of evidence which, frankly, it boggles my mind to this day that they weren't enough to make a finding that Renard was the father of DeAndre, but that's water under the bridge now. They were at least there. Without any of that, I understand you can't take a wild stab at trying to create a pot of money for somebody where one doesn't exist by claiming that his father is somebody that's not. But there was quite a bit of evidence here. And just because you lose on an issue doesn't mean that you committed sanctionable abuse along the way. We also point out that the equation is supposed to look at it at the time of pleading. So some of the arguments about, well, here's what counsel said later on, they tried to get us to flip essentially and give testimony that might help against the law firm. Again, as we said, the characterization of giving false testimony couldn't be further from the truth. But none of that happened until later. And that's not what Rule 137 entertains. It has to do with what happened at the time the pleading was filed. The court, I don't know if I need to get to this because not much time was spent on it by counsel, but he says in his brief that the court cut the attorney's fees. I mean, there was no cutting. The court never got to whether they were appropriate. They didn't get to dollar one because she found that sanctions weren't appropriate in the first place. Is this issue of the unconstitutionality of the parent object even before us, Kareem? I don't believe so because it's not properly put into the notice of appeal. One of the things we've mentioned at the beginning and end of our brief is the notice of appeal is both underwhelming in terms of there are issues they try to bring up in their brief that are not in the notice of appeal and were not part of orders that had been ruled upon by the lower court, as well as there being issues that are raised at least in the wording of the notice of appeal that are never addressed in the brief and therefore are waived. But, yes, I don't think that's an issue that's even in front of a court. And my final question, this issue of things that still remained, motions that were still remaining, that counsel argues that courts should have ruled upon before they granted the involuntary dismissal. Comment on that. Sure. I think if you review the record and the briefs, I believe the only such later filed motions were the ones that were denied summarily based on being late on March 4th. However, if it's possible that I'm wrong and he once again brought more motions after that, they would have nevertheless also been post-dispositive motion deadline. And so I don't recall if there was something where at the last second counsel brought in additional motions. I have seen that before in practice where somebody brings in written motions to a final pretrial conference and just hands them out to the various parties. And sometimes judges will look at them and say, no, I've already ruled on these issues. So if that happened, it's not something that I recall, but it would have been just the same as the ones ruled in March. They would have been denied because they would have been brought after the filing deadline. And as we cited in our brief, a court does have the right to control its docket by setting reasonable deadlines. And it was never argued that the deadline was unreasonable, but they lacked notice of that deadline. Counsel, final report. Okay. Well, I don't know if there's a lot I wanted you to say because we kind of honed in on it. I think the only thing that it really comes down to is whether sanctions are appropriate. It's an abuse of discretion standard. The judge was very clear that she didn't even get to any amount of sanctions. And there's just no reason right now to revisit that issue. I think this is one that after many years is just ready to be put to bed. Thank you. Six minutes, counsel. Thank you. With respect to the 137 motion for sanctions, Your Honor, I listened carefully and I'm sure the court listened carefully to the arguments of counsel. The claim that was brought against my clients was a claim for conversion. In preparing to file that claim for conversion, plaintiff's counsel had an obligation to look at the statute of limitations. It was clearly provided in the Parentage Act, a two-year statute of limitations, for the predicate claim that he was the sum of. As far as the actual conversion, there was Judge Egan's order, which remained uncontested, that lawfully awarded the proceeds to my clients. Counsel has referred to it as my clients having stolen the money. I have yet to see someone steal money that is awarded to them by an order of the court. It is important to note, too, that they had time to challenge Judge Egan's order under a 1401 petition and did not do so. The sanctions are appropriate because there is nothing that has been presented to this court to reflect that there was a good-faith inquiry made into the limitations issue. There is nothing that reflects that there was a good-faith inquiry made into the collateral estoppel on Judge Egan's order awarding the proceeds. All you've heard is there was contested evidence on the paternity aspect of the claim. Counsel, none of Judge Egan's orders are on appeal, are they? They were not appealed. Right. And he wasn't a party to that proceeding. Judge Egan? No. The plaintiff was not a party to the proceeding before Judge Egan's. He was not a party. So he couldn't be collaterally stopped by anything that she decided. Respectfully, Your Honor, the principle of collateral estoppel relates to the issue of privity. There's a good definition of privity in the restatement, if I may, Your Honor. That's okay. I'll look at it. Okay. That's your argument why he's collaterally stopped is because of privity? Because of privity. He cannot say. And who is who? He was in privity with the Fowler brothers in the prosecution of the claim for wrongful death. If he had no interest in the wrongful death proceeds, as he maintains at one point in his brief, then he certainly has no interest in all of the wrongful death proceeds, as he maintains in another portion of the brief. The argument is absolutely legally inconsistent, logically inconsistent, and it's not a good-faith argument because you can't have it both ways, which is what has been argued. There has been some discussion of whether this was an attempt not to coerce false testimony but to coerce the Fowler brothers into testifying that DeAndre was the son of Renown. There is absolutely nothing in the record that establishes that any time and any place did any of the Fowler brothers say that DeAndre was the son of Renown. So the motive in bringing the lawsuit, the motive in filing the lawsuit, was to coerce this false testimony, and that's a violation of Rule 137 because it was not a pleading brought in good faith. It was not a pleading brought with a reasonable investigation of the law and the facts applicable to the claim, both the part of the Fraternity Act aspect and the conversion aspect of the claim. And as this Court had previously noted, the resolution of the Fraternity issue had no bearing on the outcome of the Fraternity Act of the Conversion Act claim. Again, I would invite the Court to look closely at the timeline. The order of March 4th, which the Court referred me to at page 833, is an order of March 3rd. It deals with the judgment for motion and pleadings being denied, the judgment for reconsideration of the Court's February 11th orders denied. All of its positive motions were to be filed by February 11th, I'm sorry, 9th, but the Court did not resuscitate this claim until February 11th, and the Court further says the Court will not entertain any additional motion practice except those relevant for trial. We did trial additional motions. We did not seek legal leave of court because the Court had already told us that we couldn't do it, but we did it anyway because that is the appropriate thing to do is to make that record. The fact that the Court did not rule upon it does not bar this Court from ruling on those motions because Rule 366 gives this Court the jurisdiction to enter any appropriate order that should have been made. Here, the issues are completely legal issues. They are not factual issues. There's no reason to remand the case to the trial court for resolution of those issues. We respectfully request the Court to enter sanctions in the amount that we sought in that brief. Thank you. All right. Very well done, gentlemen. Thank you for your argument today. Court is adjourned.